IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DERRICK BLANTON
and SAMANTHA BLANTON                                      PLAINTIFFS

v.                                             CIVIL ACTION NO. 2:23-cv-145-HSO-BWR

MAR-JAC POULTRY MS, LLC.,                                 DEFENDANTS
MAR-JAC TRANSPORTATION, LLC,                          (JURY TRIAL DEMANDED)
MAR-JAC POULTRY INC.

## COMPLAINT

Mar-Jac knew that the Blantons' daughter has a chronic medical condition. The medical FMLA certification stated that, "due to the condition, it is medically necessary for the employee to be absent from work to provide care for the patient on an intermittent basis, including for any episodes of incapacity, *i.e.* episodic flare-ups." On October 4, 2021, she had a flare-up. The Blantons asked for leave. They were entitled to it under the FMLA without further medical documentation. Instead of granting them leave, Mar-Jac insisted that they were required to return with doctor's excuses the following morning, or else they would be terminated. This was unlawful. Then, despite returning with doctor's excuses within 48 hours of the beginning of their leave, the Blantons were illegally terminated. For these reasons, COME NOW THE PLAINTIFFS and allege as follows:

## PARTIES

1. Plaintiff Derrick Blanton is an adult resident of Mississippi.

2. Plaintiff Samantha Blanton is an adult resident of Mississippi.

1

3. Mar-Jac is a single enterprise/joint employer comprised of at least three entities, Defendant Mar-Jac Poultry MS, LLC, Defendant Mar-Jac Transportation, LLC, and Defendant Mar-Jac Poultry, Inc. (hereinafter jointly referred to as "Mar-Jac").

4. Mar-Jac is doing business in the state of Mississippi.

5. Mar-Jac (all entities) can be served via their registered agent, National Registered Agents, Inc. at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

6. Mar-Jac has over $300 Million in annual revenue.

7. Mar-Jac has over $100 Million in revenue in Mississippi.

8. On information and belief, Mar-Jac has more than two hundred employees.

9. On information and belief, Mar-Jac has more than five hundred employees.

10. Mar-Jac has more than 50 employees within a 75-mile radius of the worksite here.

11. Mar-Jac is an employer as defined by the Americans with Disabilities Act and the Family Medical Leave Act.

12. Mar-Jac knows it cannot discriminate against someone on the basis of association of someone with a disability.

13. Mar-Jac knows it is required to comply with the FMLA and its implementing regulations.

14. Mr. and Mrs. Blanton were employees of Mar-Jac as defined by the ADA and the FMLA.

15. Mr. and Mrs. Blanton each had more than a year of employment at the time of their termination.

16. Mr. and Mrs. Blanton had each worked more than 1,250 hours in the 12 months preceding their termination.

17. During the time this action arose, Mr. and Mrs. Blanton were covered by the ADA and the FMLA.

## JURISDICTION, VENUE, EXHAUSTION, AND JURY DEMAND

18. Jurisdiction is proper in this honorable Court under 28 U.S.C. § 1331 because this claim arises under federal law, specifically, the Americans with Disabilities Act of 1990, as amended, and the Family and Medical Leave Act of 1993, as amended.

19. Venue is proper in this honorable Court under 28 U.S.C. § 1391 because all events described below took place in and around Wayne County, Mississippi.

20. Their case concerns the discrimination, interference, and retaliation Mr. and Mrs. Blanton experienced on or about October 6, 2021.

21. Mr. and Mrs. Blanton filed charges of discrimination with the Equal Employment Opportunity Commission concerning the allegations in this complaint.

22. These charges were filed on March 21, 2022.

23. This is 166 days after their termination.

24. The Blantons filed their charges within 180 days of the events alleged.

25. All Defendants had actual notice of both of the charges within 180 days.

26. Mr. Blanton's charge number was 423-2022-00804.

27. Mrs. Blanton's charge number was 423-2022-00807.

28. On or around July 20, 2023, Mr. and Mrs. Blanton obtained notices of right to sue from the EEOC for their charges.

29. Mr. and Mrs. Blanton filed this complaint on October 5, 2023.

30. This is within 90 days of receipt of the right-to-sue letter.

31. Mr. and Mrs. Blanton have timely and fully exhausted all available administrative remedies.

32. This claim is filed within two years of the termination on October 6, 2023.

33. The statute of limitations for FMLA claims is two years (three years if willful).

34. There is no statute of limitations defense concerning the FMLA claims related to the termination on October 6, 2023.

35. Plaintiffs demand a trial by jury on all issues so triable.

## FACTS

36. Mr. Blanton and Mrs. Blanton worked at Mar-Jac in Waynesboro, Mississippi.

37. They began working there in September 2019 and April 2020 respectively.

38. Their daughter, I.B., a minor, suffers from a number of medical conditions which are disabling.

39. This disability causes I.B. to suffer from, among other things, chronic pain and migraines.

40. As a result, I.B. requires regular clinic and hospital visits throughout the year, both for regular check-ups and medical emergencies.

41. I.B. also has "flare ups" - intermittent periods of incapacity when she needs parental care.

42. Upon being hired by Mar-Jac, the Blantons informed their supervisor, Joel Miller, of their daughter's disability and the fact that they may require time off to care for their daughter.

43. Mr. Miller assured them that Mar-Jac would work to accommodate their daughter's medical situation when the need arose.

44. In August 2021, Mrs. Blanton notified, Mr. Miller, that she needed time off to take I.B. to a scheduled doctor's appointment.

45. Mr. Miller asked her to request FMLA certification forms from James Dickenson, Supervisor of Human Resources.

46. She requested the FMLA certification forms from Mr. Dickenson that day.

47. Mr. Dickenson refused to provide the paperwork to Mrs. Blanton.

48. Mr. Dickenson stated that he needed to see medical proof of a diagnosis of illness or disability for I.B. before he could give her the paperwork to be completed.

49. This was unlawful under the FMLA and its implementing regulations.

50. Mar-Jac knew this was unlawful and the violation is willful under the FMLA.

51. Mrs. Blanton faced a choice: to bring her child to her physician's appointment and arrive late for work the next morning, or cancel her appointment.

52. Mrs. Blanton opted to keep the appointment.

53. The following morning Mrs. Blanton faced disciplinary action.

54. She met with Cassandra McGee, a union representative, and members of the human resources department.

55. Mrs. Blanton explained that she attempted to obtain certification to obtain FMLA leave, but was denied.

56. They proceeded to ask for details regarding who was processing the request.

57. Mrs. Blanton explained that Mr. Dickenson denied the request.

58. Nearby, Mr. Dickenson, overhearing this conversation began to angrily yell at Mrs. Blanton while trying to explain why he did not provide the paperwork.

59. He exclaimed "You didn't tell me what you needed it for!" and that he believed she needed to provide documentation of the illness or disability before he could provide her FMLA certification forms or words to that effect.

60. Both of these exclamations were incorrect.

61. This was unlawful under the FMLA and implementing regulations.

62. Mar-Jac knew this was unlawful and the violation is willful under the FMLA.

63. The union representative, Ms. McGee, found some FMLA certification forms for Mrs. Blanton. '

64. Mrs. Blanton took the medical certification to the doctor and had it filled out on August 17, 2021. It was faxed to Mar Jac on August 23, 2021.

65. On the certification, the doctor indicated that, "due to the condition, it is medically necessary for the employee to be absent from work to provide care for the patient on an intermittent basis, including for any episodes of incapacity, *i.e.* episodic flare-ups."

66. This certification should have been enough information to approve intermittent FMLA for the Blantons to care for their daughter during flare-ups. The FMLA should have been approved.

67. On information and belief, Mar Jac did not give the Blantons any response to this medical certification. They did not approve, disapprove, request more information, or request an evaluation. They did not give them notice of their rights under that FMLA certification

68. On the morning of October 4, 2021, Mr. Blanton received a phone call from one of his children at home.

69. In this call, he was informed that his daughter, I.B., was having a medical emergency.

70. Mr. Blanton informed his family he would return home as soon as he requested leave from work.

71. Shafi Davis, Mr. Blanton's immediate supervisor, overheard this conversation and proceeded to contact Mr. Miller, Mr. Blanton's second-level supervisor.

72. Mr. Blanton then proceeded to report to Mr. Miller.

73. During their conversation, Mr. Miller told Mr. Blanton he believed his situation was "bullshit."

74. Mr. Blanton understood this to mean that Mr. Miller was angry at him for needing to leave work to take care of his disabled daughter.

75. After this conversation, Mr. Blanton informed his wife of his daughter's medical emergency.

76. They immediately reported to human resources to request leave to care for their daughter.

77. Mr. and Mrs. Blanton were entitled to intermittent leave under the FMLA certification already provided.

78. Instead of granting the request, they were required to sign a personal memo acknowledging that if they did not return to work with an additional physician's excuse covering the employee's name, date, and ability to return to work by the following morning, they would be subject to termination.

79. This was a violation of the FMLA and its implementing regulations.

80. Mr. or Mrs. Blanton were not accurately notified of their FMLA rights.

81. Mar-Jac has been using this form "personal memo" to routinely violate the FMLA, with full knowledge that this form is unlawful.

82. Human resources then verbally informed them that they needed "to bring a doctor's excuse when they returned to work".

83. Neither Mr. nor Mrs. Blanton were scheduled to work on October 5, 2021.

84. Mr. and Mrs. Blanton immediately left for home.

85. The Blantons obtained a physician's excuse.

86. The physician's excuse provided the Blantons two days of time off work from that Monday, October 4th until the following Wednesday, October 6th.

87. Mr. and Mrs. Blanton returned with the physician's excuses when they returned to work on October 6, 2021.

88. These excuses included the dates they requested leave, their names, and the ability to return to work as required by their signed Personal Memos.

89. Both Mr. and Mrs. Blanton were terminated by Mr. Dickenson and another human resources representative.

90. Mar-Jac terminated the Plaintiffs on the basis of their association with a disabled individual.

91. Alternatively, Mar-Jac terminated Mr. and Mrs. Blanton because of their association with an individual they regarded as disabled.

92. Alternatively, Mar-Jac terminated Mr. and Mrs. Blanton because of their request for protected FMLA leave and interfered with their leave and reemployment rights.

93. Through Mr. and Mrs. Blanton's termination, Mar-Jac retaliated against them on the basis of their invocation of protected FMLA leave.

94. Mar-Jac replaced Mr. and Mrs. Blanton with employees who had no history of FMLA requests.

95. Mar-Jac replaced Mr. and Mrs. Blanton with employees with no known association with disabled family members.

## CAUSES OF ACTION

### COUNT I: DISABILITY DISCRIMINATION UNDER THE ADA

96. Plaintiffs incorporate all allegations set forth in all other sections of this complaint.

97. Under the ADA, it is unlawful for Defendants to discriminate against an employee because of that employee's association with an individual with a disability.

98. Here, Plaintiffs daughter's illness and/or related conditions were a disability.

99. Alternatively, Plaintiffs daughter's illness and/or related conditions were regarded as a disability by Defendants as defined under the ADA.

100. Defendants discriminated against Plaintiffs by terminating them on the basis of their association with a disabled person.

101. With this discrimination, Defendants violated the law.

102. In doing so, Defendants harmed Plaintiffs.

COUNT II: INTERFERENCE UNDER THE FMLA

103. Plaintiffs incorporate all allegations set forth in all other sections of this complaint.

104. Under the FMLA, it is unlawful for Defendants to interfere with an employee's attempts to exercise rights under the FMLA.

105. Defendants unlawfully interfered with Plaintiffs' efforts to take FMLA.

106. In doing so Defendants harmed Plaintiffs.

COUNT III: RETALIATION UNDER THE FMLA

107. Plaintiffs incorporate all allegations set forth in all other sections of this complaint.

108. Under the FMLA, it is unlawful for Defendants to retaliate against an employee for attempting to exercise their rights under the FMLA.

109. Here, Plaintiffs invoked their rights to protected leave under the FMLA, engaging in activity protected against retaliation under the FMLA

110. Defendants retaliated against Plaintiffs

111. Through this retaliation, Defendants violated the law.

112. In doing so, Defendants harmed Plaintiffs.

REMEDIES

113. Plaintiffs seek all remedies available, including but not limited to the following:

   a. Back pay;

   b. Reinstatement and/or front pay, as appropriate;

   c. Liquidated damages;

   d. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendants' unlawful actions;

   e. Consequential damages and any other pecuniary harms flowing from Defendants' unlawful actions;

   f. Punitive damages commensurate with the misconduct and necessary to deter future violations of the law;

   g. Pre- and post-judgment interest;

   h. Attorney fees;

   i. Costs;

   j. An injunction curing Defendants' unlawful actions and prohibiting any future similar actions;

   k. Notice given to all employees regarding the violations found by this Court, and notifying such employees of the order entered proscribing any future similar violations;

   l. Any other equitable relief as this honorable Court deems appropriate.

   m. A final judgment declaring that Defendants' treatment of Plaintiffs was unlawful; and/or,

   n. Any other relief available under any applicable principle of law or equity.

Respectfully submitted on October 5, 2023,

Derrick Blanton

Samantha Blanton

*/s/ Joel Dillard*
Joel Dillard (MSB # 104202)
JOEL F. DILLARD, P.A.
775 North Congress Street
Jackson, Mississippi 39202
(601) 509-1372, ext. 2
joel@joeldillard.com